THE TEXAS CENTRAL RAILWAY COMPANY v. T. L. ROWLAND.

No. 148.

1. Practice—Order of Trial.—The court did not err in requiring defendant to go to trial on the second day of the term, though the case was a jury case, and though no day had been fixed for calling the jury docket; it nowhere appearing that defendant was in any way injured by such action of the court.

2. Evidence—Fact Case.—In an action against a railway for injuries to a fireman resulting from a collision of trains caused through the incompetency of a drunken engineer, it was permissible for a witness to testify as to the daily amount of whisky drunk by the engineer at and about the time of the collision, though the witness did not know the engineer's general reputation for temperance or intemperance, and though it did not appear that the facts so testified to by the witness were communicated or known to the defendant company.

3. Charge of Court Assuming Fact.—It is within the province of the court to assume in its charge the existence of an undisputed fact.

4. Charge of Court—Immaterial Error.—That the charge of court, in the terms used, confounded a default growing out of an omission with a default growing out of an act, is not material, where the jury could not have been misled thereby.

5. Charge of Court — Negligence and Incompetency of Fellow Servant.—A charge of court, that if defendant had not been reasonably careful in selecting a competent engineer, and the collision had resulted through his "negligence," without plaintiff (a fellow servant) contributing thereto, plaintiff might recover, though erroneous in itself, was not reversible error when taken with other instructions denying recovery unless the injury was shown to have resulted from the "incompetency" of the engineer, and such incompetency was known to defendant, and unknown to plaintiff.

6. Charge of Court—Measure of Damages.—A charge that the jury might assess the amount shown by the evidence to be due plaintiff, and that they were the sole judges as to the amount of damages and the extent of the injuries, taken with an instruction that in estimating damages they were to consider physical and mental pain, character of injury, effect upon health, capacity for labor, etc., was sufficiently specific to indicate that only compensatory damages were to be awarded.

7. Special Judge — Waiver of Disqualification.—The action of the parties in trying a case, without objection, before a special judge, is in itself an agreement by them to submit the case to him as special judge, and objections as to the propriety and efficacy of his appointment can not thereafter be made.

ERROR from Eastland.    Tried below before L. W. CAMPBELL, Esq., Special Judge.

*L. C. Alexander*, for plaintiff in error.—1. It was not lawful to adduce testimony as to individual or occasional acts of drinking by Hull, the servant charged to be incompetent, there being no evidence that said special acts were brought home to the defendant, and the witness failing to testify as to the general reputation of the servant as to temperance or intemperance.    2 Thomp. on Neg., 1053, 1054; Railway v. Rush, 84 Ill., 570; Cleghorn v. Railway, 56 N. Y., 44.

2. The court erred in instructing the jury, that it appeared from the uncontroverted evidence that plaintiff received injuries by the collision of its cars, etc. Said charge was calculated to mislead the jury to believe that there was no controversy as to injuries to the extent claimed by plaintiff. The entire case of plaintiff being in issue by the pleadings of defendant, the court erred in so charging the jury, and the same was misleading and on the weight of evidence. Altgelt v. Brister, 57 Texas, 436; Andrews·v. Marshall, 26 Texas, 215; Railway v. Nixon, 52 Texas, 26; Railway v. Robinson, 73 Texas, 286; Heldt v. Webster, 60 Texas, 209.

3. The court erred in the third subdivision of its charge, wherein it instructs the jury, in substance, that if·the defendant, in Jake Hull, selected an incompetent servant, and the damage was caused through his negligence, defendant would be liable to plaintiff for the damage sustained by the accident, because the right to recover was dependent upon the further fact that the incompetency caused the injury, and that plaintiff was unaware of the incompetency. Hayes v. Railway, 3 Cush., 274; Wright v. Railway, 25 N. Y., 569; Pierce on Rys., 374, 375.

4. It was error to instruct the jury, that as to the amount of damages and the extent of plaintiff's injuries they were the exclusive judges, without instructing them that the measure of such damage was compensation for the injuries. Railway v. Nixon, 52 Texas, 25; Railway v. Schroder, 1 W. & W. C. C., 1148; Moore v. Anderson, 30 Texas, 229; Glasscock v. Shell, 57 Texas, 224; 1 Thomp. on Neg., 1255, 1256; 1 Suth. on Dam., 17.

5. The Constitution and laws of Texas do not warrant the appointment of special judge upon the certificate of the regular district judge, on account of his disqualification, until the court shall convene and the case shall have been reached in some manner, and the parties shall have had an opportunity to agree on a special judge; and these provisions were a limitation upon the power of the district judge to certify his disqualification and of the Governor to appoint a special judge to try the case. Const., art. 5, sec. 11; Sayles' Civ. Stats., arts. 1090–1092a; Hess v. Dean, 66 Texas, 665; Schultze v. McLeary, 73 Texas, 92; Biencourt v. Parker, 27 Texas, 562.

*Ward & Faulk*, for defendant in error.—1. The court did not err in admitting the testimony of the witness Worthington. His testimony tended to establish that Jake Hull, the fellow servant whose conduct caused the accident and injury, was incompetent and an habitual drunkard, and that these facts were known to the railway. Railway v. Willie, 53 Texas, 327, Railway v. Myers, 55 Texas, 116; Railway v. Whitmore, 58 Texas, 289; 7 Am. and Eng. Encycl. of Law, 852, 853; Lee v. Iron Works, 62 Mo., 565; Cooper v. Railway, 23 Wis., 668; Coach v. Coal Co., 46 Iowa, 17; Gilman v. Railway, 10 Allen, 233.

2. The court did not err in stating to the jury in its charge such facts

as were not controverted or were admitted. Wintz v. Morrison, 17 Texas, 387; Railway v. Stewart, 57 Texas, 170; Teal v. Terrell, 75 Texas, 283; Caruth v. Grigsby, 57 Texas, 259.

3. The charge of the court, taken as a whole, is a full, fair, and correct presentation of the law, as applied to all the issues raised by the pleadings and the evidence.

As to fellow servant: Dallas v. Railway, 61 Texas, 201; Railway v. Harrington, 62 Texas, 599; Railway v. Watts, 63 Texas, 551; Railway v. Dunham, 49 Texas, 188; Railway v. Myers, 55 Texas, 113; Railway v. Whitmore, 58 Texas, 287.

As to duty to establish rules and regulations: Railway v. Hall, 78 Texas, 658; 7 Am. and Eng. Encycl. of Law, 832.

As to test of negligence: Railway v. Oram, 49 Texas, 346; Railway v. Lyde, 57 Texas, 509; Cotton Press Co., 52 Texas, 599; 7 Am. and Eng. Encycl. of Law, 832, 845, 848–850, and notes.

4. Appellant having gone to trial before the special judge without objection, it is too late to raise the objection for the first time in a motion for new trial. Sayles' Civ. Stats., arts. 1090–1092a; Schultze v. McLeary, 73 Texas, 94; Shultz v. Lempert, 55 Texas, 273; Brinkley v. Harkins, 48 Texas, 225; Hess v. Dean, 66 Texas, 663; Thompson v. The State, 9 App., 663; 12 Am. and Eng. Encycl. of Law, 24–29; Kennedy v. Commonwealth, 78 Ky., 447; Hunter v. Ferguson, 13 Kans., 462; The State v. Whitney, 7 Ore., 386.

TARLTON, Chief Justice.—Before the Honorable L. W. Campbell, as special judge, T. L. Rowland recovered in the District Court of Eastland County against the Texas Central Railway Company, on May 30, 1888, a judgment for $9500 as damages for personal injuries caused by a collision of defendant's trains at Cisco, Texas. The injury is ascribed in plaintiff's petition to the negligence and incompetency of Jake Hull, a servant of the defendant and a fellow servant of plaintiff. It is also ascribed to the failure of the defendant to keep at the point of collision any signal or warning, and to prescribe and maintain rules and regulations for the movement and switching of its trains.

*Conclusions of Fact.*—Defendant in error was a fireman in the employment of appellant. The route of his service extended from Cisco, in Eastland County, to Albany, in Shackelford County. One Jake Hull was an engineer in the employment of appellant. At Cisco the track of the Texas Central, coursing north and south, intersected with the track of the Texas & Pacific Railway Company, coursing east and west. At this point, also, trains of the Texas Central Railway Company running between Cisco and Albany met and connected with trains of the same company running between Cisco and Waco. Passengers, baggage, and mail matter of the Texas Central

train arriving at Cisco from Waco were daily transferred to the train of the same company leaving Cisco for Albany. After this transfer, the Waco train was turned southward by means of a switch and Y track leaving the main track of the Texas Central on the west a proper distance south of the point of intersection with the Texas & Pacific track. The latter track was used as a part of this Y track until a point was reached at a proper distance east of the main line of the Texas Central, whence, by means of another Y track, the main track of the Texas Central was again reached by the train then turned southward. By means also of this Y track the train reaching Cisco from Albany was turned northward for its return trip. Hull, as an engineer, acted in the capacity of what is known as a hostler in turning these trains. At a point ten or twelve feet west of the main track of the Texas Central, and seven or eight feet south of the Texas Pacific track, and near the point of intersection of the two tracks, was a union depot—a building of such dimensions that a person on a train of the Texas Central east of it was unable to see a train on the Texas & Pacific track going east until the latter had passed the building.

On July 25, 1882, the train going north to Albany was in proper position east of the union depot. The passengers and baggage had been transferred from the Waco train, and the hour of departure—2:15 o'clock p. m.—having arrived, the defendant in error, as fireman, had rung the bell, and the engineer had blown the whistle, and the train had reached the point of intersection with the Texas & Pacific track, when the Waco train, operated and in process of being turned by Hull, collided with it and overturned the engine upon Rowland, very seriously injuring him.

The engineer Hull, as the jury found on evidence sufficient, though contested, had given no warning of the approach of his engine; he was drunk at the time of the collision; he was addicted to drink, and the defendant had been notified of that fact, though the plaintiff was unaware of it; Hull was hence incompetent.

On the issue whether the defendant kept targets or signals at the crossings of the tracks, or prescribed rules with reference to the operation of its trains, the evidence was meager and was as follows: The plaintiff testified: "There had never been any targets or flags at the crossings while I was working there; I knew there were none." The witness Jake Hull testified: "We had no special instructions with reference to switching trains over the crossings before or after the passage of trains."

*Conclusions of Law.*—The court did not err in requiring defendant to go to trial on the second day of the term, though the case was a jury case, and though no day had been fixed for calling the jury docket. While the defendant stated that a witness was absent whose testimony was material,

and who was expected to arrive soon, this statement does not seem to have been deemed sufficiently serious to be embodied in an affidavit for a continuance; on the contrary, defendant stated that it had no grounds for a continuance. It nowhere appears that the defendant was deprived of testimony by the action of the court, nor that it was in any way injured.

One Worthington, a witness for the plaintiff, having testified that he knew Jake Hull about all the time he was in the employ of defendant at Cisco, and that he did not know his reputation as to temperance or intemperance, was permitted, over the objection of defendant, to testify further as follows: "That witness knew during his acquaintance with Hull that he drank intoxicating liquors; that he drank a good deal of whisky and beer; supposed about fifteen drinks a day, perhaps, more or less—some days more and some days less; that he drank pretty much every day; some days he may have drank more, but they were very few; that he had seen him under the influence of liquor a good many times, when it appeared to be that he was drinking pretty much all the time; was around the saloon when witness was attending bar; some months he would have a bar bill of $15 or $20."

This testimony was objected to because it did not appear that these facts were communicated or became known to the defendant or its agent. We think that the evidence was admissible.

The fitness of Hull for the position of trust to which defendant had assigned him was a question in issue. These acts threw light upon this issue; they tended to show intemperance, or a character (as distinguished from a reputation) for intemperance, on the part of the engineer. It was incumbent on plaintiff to show, (1) the intemperance of the engineer, and (2) that his intemperance was known or that knowledge thereof was to be imputed to the defendant. These were the two necessary links in the plaintiff's chain of evidence. The testimony objected to tended to supply the first link. It was therefore competent. Railway v. Willie, 53 Texas, 327; Railway v. Patton, 7 S. W. Rep., 175; 7 Am. and Eng. Encycl. of Law, 852, 853, and notes. It is not necessary to consider whether this evidence alone would have been sufficient to establish the issue of incompetency so as to affect the defendant, because it was supplemented by testimony showing that the general reputation of Hull for sobriety was bad, and that the defendant's agent who had supervision of the road had been informed of his intemperate habits. Grube v. Railway, 11 S. W. Rep., 736.

The court did not err in instructing the jury, that it appeared from the uncontroverted evidence that the plaintiff received the injury by the collision of the defendant's cars. It is within the province of the court to assume in its charge the existence of an undisputed fact. Railway v. Pearce, 75 Texas, 281.

The court, among other matters, charged the jury as follows: "An

action will not lie by a servant against his master or employer for injuries sustained through the negligence or default of a fellow servant, unless it is made further to appear that such injuries were caused by the fault of the company, either in the act which caused the injury or in the employment of the person through whose incompetency or misconduct such injuries were sustained; for when a person enters into the service of a railway company, he thereby undertakes to run all the ordinary risks incident to the employment, including his own negligence or unskillfulness and that of his fellow servants who are engaged in the same line of duty, provided the company has taken reasonable care and precaution to engage competent servants to discharge the duties assigned them."

It is urged that this charge is erroneous, (1) because the jury are left to conjecture what is meant by the expression, "the act which caused the injury;" and (2) because it virtually instructs the jury that the "company was exempt from liability only provided it had taken reasonable care and precaution to engage competent servants to discharge the duties assigned them, without regard to whether the incompetency of the servant caused the injuries."

That portion of the instruction first criticised had evident reference to the plaintiff's allegations setting up the failure of the defendant to keep a target, lookout, or signal, or to provide rules. While a default growing out of an omission was thus confounded with a default growing out of an act, we do not think that the jury could be held to have been misled because of this distinction, which they should scarcely be required to make. The second criticism impresses us as a refinement of which the language of the charge is not naturally susceptible.

Plaintiff in error complains of the following portion of the court's charge: "It was the duty of defendant and those of its officers who had the right and power to employ and discharge the employes and servants of the company, to use reasonable care in the selection or employment and retention of fit and competent servants; and if defendant had not done so in the selection of the employe Jake Hull, then in that case defendant would be liable to plaintiff for the damages sustained by the accident, if the same was caused through his negligence; and plaintiff did not contribute thereto." This instruction is complained of on the ground, that it is not sufficiently restrictive of plaintiff's right to recover, this right being dependent upon the further fact, ignored by the charge, that the incompetency caused the injury, and that plaintiff was unaware of the incompetency.

The term "negligence" does not necessarily include incompetency, since a competent man may at times be negligent. If the plaintiff's injuries were due to the negligence of Hull, his fellow servant, without reference to the incompetency of the latter, the defendant would not be liable. The foregoing instruction was, therefore, if disconnected from

other portions of the court's charge, erroneous, as it indicates a view of the law contrary to that just expressed. The court, however, in the same paragraph, charged the jury as follows: "It was also the duty of plaintiff Rowland, as fireman, to have acquainted himself with the general duties of such positions. He assumed at his peril the risks and dangers naturally and ordinarily incident to his employment as such fireman, including the risk and dangers which might accrue from the negligence of his fellow servants, but not such risks and dangers as might arise from the negligence, if any, of defendant company in selecting or retaining unfit, incompetent, or intemperate servants or employes, unless such unfitness, or incompetency, or intemperance were known to plaintiff, or unless he had reasonable information amounting to notice, and he failed to notify defendant of the same, in which case plaintiff could not recover." Besides, the special instruction granted at the request of the defendant required, by emphatic iteration, that the plaintiff, as a condition of recovery, should prove that the injury sustained by him was due to the incompetency and intemperance of Hull, brought to the knowledge of the defendant. This action of the court sufficiently guarded the jury from being misled by the error above referred to.

Plaintiff in error, in its seventh assignment of error, complains of the following portion of the court's charge: "It was the further duty of defendant company to use all reasonable care and foresight to provide safe structures, competent employes, and all appliances necessary to the safety of these employes, and adopt such rules and regulations for running its trains as will avoid injury to its employes so far as this can reasonably be done; and having adopted such rules, to use reasonable efforts to conform to them, or the company will be responsible for consequences resulting from them."

It is not to be questioned that the foregoing charge is abstractly correct. 3 Wood's Ry. Law, sec. 382; Railway v. Hinzie, 82 Texas, 623. The use of the plural, "employes" (to which plaintiff in error objects), instead of the singular, "employe," could not, we think, in view of the entire charge, have misled the jury. The incompetency to be considered by the jury was elsewhere strictly confined, in conformity to the plaintiff's allegations, to the one employe Hull.

The testimony of the witnesses Rowland and Hull, already set out, with reference to the failure of the defendant to prescribe rules and to provide for signals, while meager, was sufficient under the pleadings, which were full on that issue, to justify the instruction; or if not, any detriment to the defendant was fully obviated by the first special charge granted at the request of defendant. The effect of that special instruction was to subordinate every issue or question in the case to that of the incompetency of Hull. The recovery of the plaintiff was made wholly to depend upon the solution of this issue in favor of the plaintiff.

On the measure of damages the charge was as follows: "If you find for plaintiff, you will simply so say in your verdict the amount you may find from the evidence that is due to him, if any, by reason of the damages sustained; and as to the amount of damages and extent of plaintiff's injuries you are the exclusive judges.   *   *   *   In case you should find for plaintiff, you may take into consideration, in estimating the damages, bodily and mental pain and suffering according to its degree, and probable character of the injury, its effect upon the health, the mental and physical power and capacity for labor, the pursuit and occupation, and the earning of money."

The concluding clause of the foregoing charge removes the effect of the objection which justly, we think, lies to the preceding clause.   The elements of damage proper to be considered in assessing the amount thereof were, we think, sufficiently specified in the concluding clause to indicate that the jury should award only such a sum as should compensate.   We do not agree with the defendant, that there was no evidence of mental impairment.   The relation between the mind and the body is such that where the latter is injured, as in this case, diminution of mental vigor, temporarily at least, naturally follows.

Though the definitions of "negligence," "ordinary negligence," and "contributory negligence," complained of in defendant's ninth assignment of error, are not so lucid or accurate as to meet our approval, yet when the law thereupon is in a subsequent portion of the court's charge applied to the facts of the case, we think the jury was sufficiently guarded against any misapprehension which could operate to the injury of the defendant.   The latter seems, besides, to have carefully protected itself with reference to the law of contributory negligence by the tenth special instruction granted at its request.

The tenth assignment, to the effect, that the court assumed in its charge that Hull had a character for recklessness, negligence, or drunkenness, is not, we think, justified by the record.

Plaintiff in error, in its motion for a new trial in the court below, urged for the first time and asserts here that the special judge before whom this cause was tried was disqualified to hear it.   It is insisted, that the Governor was not authorized to appoint a special judge until the parties had had an opportunity to agree on a special judge, which had not been accorded to them before the case was reached.

It is provided by article 1092, Revised Statutes, that where a district judge is disqualified to try a case pending in his court, and the parties shall fail at the first term to agree upon a special judge, it shall be the duty of the judge to certify to the Governor the fact of his disqualification and the failure of the parties to agree, whereupon the Governor shall appoint a special judge.

It appears from the recitals of the commission issued to the Hon. L.

W. Campbell, special judge in this case, that these contingencies had arisen, except that it does not appear that the failure to agree had occurred at the first term of the court, but that it occurred before that date. It further appears, that at the first term after the appointment, the December Term, 1887, the cause was continued, and that the trial was had in June, 1888, before the special judge, without objection until it was urged by motion for a new trial. In this motion it is contended, that the parties at the first term of the court after the disqualification did not fail to agree upon a special judge, and that in fact the commission was issued before the first term of the court and before the question of agreeing upon a special judge was submitted to them.

In Schultze v. McLeary, 73 Texas, 94, it is said: "The parties made no objection to the trial of the cause by the special judge until after the trial, and were it necessary, it might well be held that they thus waived all questions as to the propriety of the appointment at the time made." We think therefore that the defendant must be held in this case to have waived all question as to the propriety or efficacy of the appointment of the special judge. The action of the parties in trying the case without objection before the special judge, should be regarded as in itself an agreement by them to submit the cause to him as a special judge.

The judgment is in all things affirmed.

*Affirmed.*

Delivered April 20, 1893.